Jones, J.
The commission’s assertion in its entry in the Croy case that the common pleas court had decided that the ‘ ‘ claimant was not in the employ of Thew & Askins” has no legal justification in view of the petition’s allegation, confessed by the demurrer to be true, that Thew had been dismissed from the case before trial. Whether Croy had been employed by Thew was not determined by the verdict of the jury, as the cause proceeded against Askins alone.
Many of the features presented in these cases, some of which are reargued, have been authoritatively decided in the following reported cases: State, ex rel. Davis, v. Industrial Commission, 118 Ohio St., 340, 161 N. E., 32; State, ex rel. Williams, v. Industrial Commission, 119 Ohio St., 47, 161 N. E., 486; State, ex rel. Thompson, v. Industrial Commission, 121 Ohio St., 17, 166 N. E., 806; State, ex rel. Croy, v. Industrial Commission, 122 Ohio St., 65, 170 N. E., 644; State, ex rel. Upperman, v. Industrial Commission, 122 Ohio St., 509, 172 N. E., 364.
*169 In the Davis case, supra, this court held that the inability to fix liability upon the employer did not deprive his employee from receiving compensation due him under the law. In the Thompson case, supra, we held that the judgment in favor of the employer in the state’s suit to collect an award was not an adjudication against the injured employee who was not a party to the suit and had no control over it; and that, if the state failed to fix liability upon the employer, such failure did not deprive his employee from obtaining his award from the surplus fund. More in point is the case of State, ex rel. Crop, supra, involving the same award and the same parties. This is the second time Croy has sought mandamus to compel the payment of his award. In that case this court, five members concurring, held that the state’s failure to collect an award, and the failure to certify within two years after the date of the award that it could not be collected, did not prevent the injured employee from obtaining his award from the surplus fund. We also held that mandamus was available to compel the commission to pay the award out of the surplus fund in case the Attorney General certified to the commission that it could not be collected in whole, and that the remedy was also available if more than two years had elapsed from the date of the award and no such certification had been made.
In the Kilgore case the award was made May 29, 1928; in the Croy case on October 4,1929; and in the Gress case September 17, 1925. In each case it now appears that the Attorney General has certified his inability to collect the award from the noncomplying employer.
*170 Relying upon the previous decisions of this court construing Section 1465-74, General Code, these respective relators instituted separate actions in mandamus to compel the commission to pay their awards out of the surplus fund. Their counsel maintain their right so to do because of the clear and unambiguous language employed in Section 1465-74, General Code. Although that section of the Workmen’s Compensation Act has heretofore been repeatedly discussed by this court, we shall again call attention to its pertinent and controlling clauses.
Section 1465-74, General Code, provides that an employee of a noncomplying employer may file his application with the commission for compensation; for the certification of the award to the Attorney General for collection; for suit brought by the state against the employer, and for a speedy method of securing trial against him. The control of such suits, including the right to their compromise, has been placed entirely in the discretion of the commission. The last clause of the section reads: “The attorney general shall, as soon as the circumstances warrant, and not more than two years after the date of such award made by the commission, certify to the commission the result of his efforts to recoup the state insurance fund as herein provided, and if he certifies that such award can not be collected in whole, the award shall be paid from the surplus created by Section 1465-54,” etc.
It was the evident legislative purpose, evidenced by that section, to provide a speedy method whereby the injured employee could secure his compensation after the commission had awarded it. Kilgore, one of the relators, received his injuries more than two *171 years ago; Croy sustained his injuries more than four years ago, and Gress received his injuries more than five years ago. The contention of the commission is that, notwithstanding the previous decisions of this court holding that such injured employees may compel payment out of the surplus fund when the Attorney General has certified his inability to collect, or when he fails to so certify within the period of two years after the date of the award, the commission, by virtue of its continuing jurisdiction, has the power to vacate its former award when it subsequently ascertains that the noncomplying employer has secured a favorable verdict and judgment in a suit for its collection; and in support of that contention counsel for the commission cites and relies upon Section 1465-86, General Code, whieh reads as follows: ‘ ‘ The powers and jurisdiction of the board over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion may be justified.” Were this the only statute applying, this court could well conclude that the continuing jurisdiction of the commission for the purpose of vacation or modification would apply to all awards made by the commission. The creation of a surplus fund was authorized by the legislative act passed February 26, 1913 (103 Ohio Laws, 72, 74), and is now found in Section 1465-54, General Code. Section 1465-74, of the Workmen’s Compensation Act, amended to contain the above-quoted provision, was passed by the Legislature on March 26, 1925 (111 Ohio Laws, 222). The foregoing legislation comprised within the two acts dealt specifically with the creation of a surplus fund, with *172 the liabilities of noncomplying employers, and with the rights of their employees to the surplus fund; and in its legislation upon those specific subjects the Legislature employed plain language containing no ambiguity when it provided that “the award shall be paid from the surplus created by Section 1465-54,” if the Attorney General certified that it could not be collected from the employer. To construe the language otherwise we should have to disregard the clear and explicit language employed in the section and make it meaningless. It would be tantamount to legislation by the court. Had there been fraud or imposition practiced upon the commission — a quasi judicial body — in the procurement of the award, the commission under equitable principles has the same power to vacate a decree so procured as is exercised by courts of general jurisdiction. Irrespective of any statute for vacation, such power has always been regarded as being inherent in the body whose jurisdiction has been thus befouled. But we have no such case presented by this record.
Counsel for the commission advance the argument that, the employer having won a favorable verdict and judgment from court and jury after the award was made, it was therefore justified under the vacation statute in revoking its previous award. However, our construction of Section 1465-74, General Code, as shown by our reported decisions, has been or should have been known for many years; and meanwhile there has been ample time for the amendment of the statute if it tends to injustice. Under the statute as it now exists the injured workman is not a party to the suit of the state against the em *173 ployer for the collection of his award; nor has he any control over it. If injustice results to the state, the effort to correct it should he made in the proper channel — not to this court, but to the Legislature— to have the injured employee a party to the state suit, and giving him at least an equal right in its conduct and control.
This is the second occasion that one of these relators — Croy—has instituted mandamus action in this court to compel payment of this award. 122 Ohio St., 65, 170 N. E., 644. It was indicated in the former case that his prayer for the writ was denied solely because no certification having been made by the Attorney General, who had had two years to make it, the relator’s action was prematurely brought. Since then his employer secured a favorable judgment upon a jury’s verdict. But that fact should not operate to his prejudice nor be considered as an adjudication against him for the reasons heretofore stated; nor did it justify revocation of his award.
Under the construction which we now and heretofore have given to Section 1465-74, General Code, and adhering to its clear and explicit terms, we are of opinion that, since the Attorney General has now certified that their awards cannot he collected, the relators are entitled to their compensation from the surplus fund. The demurrers filed by the commission will he overruled. In the Croy and Gress cases a writ of mandamus will issue forthwith compelling the commission to pay those relators their compensation out of the surplus fund. Likewise, in the Kil *174 gore case, if the defendant does not desire to further plead, a writ will issue in his favor.

Demurrers overruled.

Matthias, Day and Allen, JJ., concur.
Kinkade, J., not participating.
Marshall, C. J., dissents.